# Exhibit 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
Civil Action No.:   2:20-cv-02117 (JMW)
- - - - - - - - - - - - - - - - - - - - - -x
CAROL MCGUIRE,

                              Plaintiff,

          -against-
VILLAGE OF HEMPSTEAD, VILLAGE OF
HEMPSTEAD POLICE DEPARTMENT, VILLAGE OF
HEMPSTEAD POLICE CHIEF PAUL JOHNSON,
VILLAGE OF HEMPSTEAD POLICE OFFICER JACK
GUEVREKIAN, VILLAGE OF HEMPSTEAD POLICE
OFFICER JOHN DOES #1-5, individually and
in their official capacities,
                              Defendants.
- - - - - - - - - - - - - - - - - - - - - -x
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
Civil Action No.:   2:22-cv-03671 (JMW)
- - - - - - - - - - - - - - - - - - - - - -x
REGINA PRUITTE,


                              Plaintiff,


          -against-


VILLAGE OF HEMPSTEAD, VILLAGE OF
HEMPSTEAD POLICE DEPARTMENT, VILLAGE OF
HEMPSTEAD POLICE CHIEF PAUL JOHNSON,
VILLAGE OF HEMPSTEAD POLICE OFFICER JACK
GUEVREKIAN, VILLAGE OF HEMPSTEAD POLICE
OFFICER JOHN DOES #1-5, individually and
in their official capacities,


                              Defendants.


- - - - - - - - - - - - - - - - - - - - - -x

400 Garden City Plaza

Garden City, New York

March 7, 2025

9:53 a.m.

EXAMINATION BEFORE TRIAL of DEREK WARNER, the Non-Party Witness in the above-entitled action, held at the above time and place, taken before MELISSA COREAS, a Notary Public of the State of New York, pursuant to NOTICE and stipulations between Counsel.

*     *     *

APPEARANCES:

    HORN WRIGHT, LLP
    Attorneys for Plaintiffs
        400 Garden City Plaza
        Suite 500
        Garden City, New York  11530

    BY:  PABLO A. FERNANDEZ, ESQ.


    HARRIS, BEACH, MURTHA, PLLC
    Attorneys for Defendants - VILLAGE OF
    HEMPSTEAD, VILLAGE OF HEMPSTEAD POLICE
    DEPARTMENT, VILLAGE OF HEMPSTEAD
    POLICE CHIEF PAUL JOHNSON AND
    NON-PARTY WITNESS - DEREK WARNER
        333 Earle Ovington Boulevard
        Suite 901
        Uniondale, New York  11553
    BY:  DANIEL LECOURS, ESQ.


    REYNOLDS, CARONIA, GIANELLI & LA
PINTA, P.C.
    Attorneys for Defendant - POLICE
    OFFICER JACK GUEVREKIAN
        200 Vanderbilt Motor Parkway
        Suite C-17
        Hauppauge, New York  11788

    BY:  ANTHONY LAPINTA, ESQ.


        *     *     *

STIPULATIONS

IT IS HEREBY STIPULATED AND AGREED, by and among counsel for the respective parties hereto, that the filing, sealing and certification of the within deposition shall be and the same are hereby waived;

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to form of the question, shall be reserved to the time of the trial;

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be signed before any Notary Public with the same force and effect as if signed and sworn to before the Court.

*     *     *

D E R E K   W A R N E R, the Witness herein, having first been duly sworn by the Notary Public, was examined and testified as follows:

BY THE

COURT REPORTER:

Q.    Please state your full name for the record.

A.    Derek Warner.  D-E-R-E-K. Warner, W-A-R-N-E-R.

Q.    Please state your address for the record.

A.    99 James Garner Way, Hempstead, New York.

Q.    Do you know the zip code?

A.    11550.

EXAMINATION BY

MR. FERNANDEZ:

Q.    Good morning, Chief.

A.    Good morning.

Q.    My name is Pablo Fernandez.  My firm represents Plaintiffs Carol McGuire and Regina Pruitte in the present lawsuit against the Village of Hempstead and

D. WARNER

retired police officer Jack Guevrekian. This morning, I'm just going to ask you a few questions regarding the litigation.

If at any point you don't know the answer to my question, just let me know. I don't want you to take any guesses and I'll just move on to my next question. If at any point I speak too fast, mumble, or if you don't understand my question, just let me know that as well --

A. Okay.

Q. -- and I'll be happy to rephrase it. If we need to take a break, let me know that as well. I just ask that if there's a question pending, you answer the question first, and then we'll move on to taking a break.

I'm just going to start out with some preliminary questions first and then I'll move on to more substantive questions. Are you presently taking any medications prescribed or not prescribed that would affect your ability to testify

D. WARNER

truthfully here today?

A.     No.

Q.     Have you consumed any alcohol in the past 24 hours?

A.     No.

Q.     Have you previously sat for a deposition?

A.     Probably over 15 years ago.

Q.     Okay.  Was that on a personal matter or work related?

A.     Work related.

Q.     Okay.  Were you a party to that litigation or a witness?

A.     Witness.

Q.     Okay.  Do you recall the name of that action?

A.     No.

Q.     Or the caption of that action?

A.     No.

Q.     Okay.  Prior to today's deposition, did you review any documents?

A.     Yes.

Q.     And what documents did you review?

D. WARNER

A.    Jack Guevrekian's personnel file.

Q.    Okay.  And when -- when you say "Jack Guevrekian's personnel file," what -- what specifically do you mean by that?

A.    We have a package of everything from the employment history, anything related to his career while he's with the Hempstead Police Department.

Q.    Okay.  So that is anything that would have been submitted from the date of hire to date of retirement?

A.    That's correct.

Q.    Okay.  Would that file have contained any complaints, disciplinary action against Jack Guevrekian?

A.    Yes.

Q.    Okay.  Would that file have contained any performance review?

A.    Yes.

Q.    Okay.  Other than Jack Guevrekian's personnel file, what else did you review, if anything?

D. WARNER

A. That's it.

Q. Okay. Prior to today's deposition, did you speak with anyone regarding your testimony here today other than your attorney?

A. No.

Q. Okay. Other than your attorney, did you speak with anyone regarding the lawsuit of Carol McGuire and Regina Pruitte?

A. No.

Q. Okay. Sir, what is your highest level of education?

A. Some college.

Q. Okay. And where -- where was that?

A. Polytechnic University.

Q. Okay. And how many credits did you complete?

A. Sixty-four.

Q. Okay. Okay. And you are presently employed with the Village of Hempstead, correct?

A. Yes.

D. WARNER

Q. Okay. And that is with the Village of Hempstead Police Department?

A. Yes.

Q. And when did you commence your employment with the Village of Hempstead?

A. October 2000.

Q. Okay. And prior to commencing your employment with the Village of Hempstead Police Department, did you have any other law enforcement experience?

A. No.

Q. Okay. Were you ever or are you presently a member of the armed services?

A. No.

Q. Okay. Now, that October 2000 date, was that also the date that you were enrolled in the police academy?

A. That's correct.

Q. Okay. And which academy did you attend?

A. Nassau police academy.

Q. Okay. And if you recall, how long was that academy for?

A. Just under seven months.

D. WARNER

Q. Okay. And after the Nassau County Police Academy -- well, withdrawn.

And did you successfully complete the academy?

A. Yes.

Q. Okay. And then after the -- after graduating from the police academy, was there a probationary period --

A. Yes.

Q. -- that you had to complete?

A. Yes.

Q. Okay. And how long was that probationary period for?

A. That was for a year.

Q. Okay. And did you successfully complete that probationary period?

A. Yes.

Q. Okay. And when you -- well, withdrawn.

Presently, what is your rank with the Hempstead Police Department?

A. Assistant chief.

Q. Okay. And as assistant -- as assistant chief, what are some of your

D. WARNER
responsibilities?

A.   Administrative work, discipline matters, compliance matters for the Village, FOIA request, discovery, things like that.

Q.   Okay.  And how long have you held that position of assistant chief?

A.   For assistant chief, just about under two years.

Q.   Okay.  So since approximately 2022, 20 --

A.   Yeah, '22.  Yes.

Q.   Do you recall when you were promoted to assistant chief?

A.   It was probably September of '22.

Q.   Okay.  And prior to attaining the rank of assistant chief, what rank did you hold?

A.   Deputy chief.

Q.   Okay.  And what period of time were you the deputy chief?

A.   For a little bit over a year.

Q.   Okay.  So that would have been

D. WARNER

2021 --

A.    Yeah.

Q.    -- approximately?

A.    Yeah, end of '20.

Q.    End of '20 through September of 2022?

A.    Mm-hmm.  That's correct.

Q.    Okay.  And then prior to deputy chief, what rank did you hold?

A.    Detective lieutenant.

Q.    And if you know, approximately how long did you hold that rank?

A.    About -- I don't know exactly, but about two, two to three years.

Q.    Okay.  And prior to detective lieutenant, what rank did you hold?

A.    Lieutenant.

Q.    And how long did you hold that rank of lieutenant for?

A.    I know it was about 19 months.

Q.    Okay.  And then prior to lieutenant, what rank?

A.    Detective sergeant.

Q.    And approximately how long did

D. WARNER

you hold that rank for?

  A.  That was also -- I would say
that's about a year.

  Q.  And then prior to detective
sergeant, what rank did you hold?

  A.  Sergeant.

  Q.  Okay.  And approximately how
long did you hold that rank for?

  A.  Close to three years.  That was
in 2015.

  Q.  Okay.  Two thousand fifteen when
you began -- when you commenced the rank
of sergeant or when you --

  A.  No.  The two -- actually, 2011,
I became a sergeant, so around 2015,
detective sergeant.

  Q.  Gotcha.  And then prior to
holding the rank of sergeant, what rank
did you hold?

  A.  Police officer.

  Q.  Okay.  Now, with regards to the
rank of deputy chief, what were some of
your responsibilities as deputy chief?

  A.  Deputy chief, again, daily

D. WARNER

administration, scheduling tours, manpower issues, would also be involved if there were any complaints, anything along that nature.  It was -- at that time, it was two of us, so we -- we shared the workload.

Q.    Okay.  And when you say "complaints," what complaints --

A.    Anything.

Q.    -- are you referring to?

A.    Parking condition complaint, someone getting a ticket, anything along that line.  It varied --

Q.    Gotcha.

A.    -- every day.

Q.    Not -- not complaints related to any personnel?

A.    If -- if there was any complaint about someone, I would be made aware of it, yes.

Q.    Okay.  As deputy chief, was it your responsibility, though, to conduct an investigation regarding those complaints?

A.    Yes.

D. WARNER

Q.   Okay.  Who was the other deputy chief at that time, if you recall?

A.   It was Chief Holland, who was an assistant chief at the time, and I was deputy chief.

Q.   Oh, I'm sorry.  I thought you had mentioned that there were two deputy chiefs?

A.   No, no, no.  There was just two of us.  Myself and --

Q.   Gotcha.

A.   -- Holland.  Yeah.

Q.   Understood. Okay.  Okay.  At present, who is the chief of the department?

A.   Richard Holland.

Q.   Okay.  As the -- well, withdrawn.

As assistant chief, do you have any -- any responsibilities with regard to the hiring or firing of personnel?

A.   Yes.

Q.   Okay.  And that's presently?

A.   That's correct, yeah.

D. WARNER

Q. Okay. And you mentioned you had a role in disciplining personnel as well?

A. Yes.

Q. And when I say "personnel," I'm referring to patrol officers.

A. Yeah. Patrol, sergeants, lieutenants, yes.

Q. So any -- any rank below your rank?

A. Correct.

Q. Okay. Do you have any responsibilities associated with the in-service training of personnel?

A. We have people who do the in-service training, so we set up the schedule for them to go to training.

Q. Okay. And when you say "people," do you mean Village of Hempstead Police Department personnel or someone outside your department?

A. It's a combination, but primarily, they're -- they're Village of Hempstead employees.

Q. Okay. Now, with regards to the

D. WARNER

disciplining of patrol officers, if you could explain to me, what is the process that the Hempstead Police Department --

A.    Okay.

Q.    -- carries out?

A.    If we receive a complaint about an officer, we try to collect the basic facts.  From that point, we usually have the conversation amongst ourselves and then we contact our legal department to understand where we are.  Like if it's something simple like someone's upset about a parking ticket, you know, that's handled, you know, probably without the attorneys.  If it's something substantial, we involve, you know, if it's a criminal matter, we would involve the -- the legal.

Q.    Okay. And how are civil -- how are complaints received by the department?

A.    There are walk-ins.  Someone might come into the station to file a complaint.  We have forms behind the desk so they can fill out a form.  We just recently added online, someone could file

D. WARNER

a complaint online.  That's something new.
Or it could be a simple phone call into
the station or getting -- to get in
contact with anyone there, whether it's
the -- the -- us, the mayor's office, or
just notifying another -- another
supervisor.

Q.    Okay.  Now, was that -- other
than the ability now to file a complaint
online, has the department always followed
the same process?

A.    To my knowledge, yes.

Q.    Okay.  To your knowledge, when
was -- had -- had the process changed in
any way?

A.    I'm not aware of a change, so.

Q.    Since -- since -- since you've
began your career at the --

A.    Yeah.

Q.    -- police department?

A.    Yeah, I -- I believe it has not
changed.

Q.    Okay.  Now, if there was a -- if
there was a complaint made by another

D. WARNER

officer to a supervisor, how is that complaint handled?

A.    Well, officer verse officer?

Q.    Yes.

A.    It's pretty much the same process.  The chiefs would have a -- we would collect the information, see where -- what the complaint is regarding, and then we have to make a decision where we would have to go to next.

Q.    Okay.  And who's -- who's assigned within -- within the department?  Who would be assigned to investigating that complaint?

A.    Typically the assistant chief would -- would initiate most investigations, but depending on who's involved, it could -- that could change to the chief, it could be a deputy, you know.

Q.    Hempstead Police Department doesn't have an Internal Affairs Bureau, correct?

A.    No.  We are developing that now, so Nassau County Police has an Internal

D. WARNER

Affairs, so things can be referred over to them as well, you know, just so if it's -- so there's no conflicts, but -- but yeah, that's something we're developing now.

Q. When would a complaint be referred to the Nassau County Police Department's Internal Affairs Bureau?

A. It depends on -- it could come from the complainee. You know, they have -- someone could come contact them directly or if we feel there's a need to reach out to them to handle something that, you know, that they -- they -- that way, so there's nothing saying there's a bias or anything, so we might just hand it over to them.

Q. Well, in your -- in your experience, when -- withdrawn.

In your experience, has that ever occurred?

A. I can't recall of a situation off the top of my head, no.

Q. Okay. Would it -- would it depend on the nature of the complaint,

D. WARNER

meaning if it's a criminal act or something of that nature?

A. Yes.

Q. Is that something that would be referred to the Nassau County Police Department's Internal Affairs Bureau?

A. Yes. Well, again, with that -- those initial conversations, we -- we'd contact our legal department and we would go under their guidance the best way to proceed.

Q. Okay. And when you say "legal department," are you referring to the Village's legal counsel or does the department have its own internal legal counsel?

A. The Village has their -- a legal department. We have labor attorneys. We also have the Village attorneys that we could request information or guidance.

Q. Okay. But there's no -- and I'm sorry. I -- I just wanted to be clear. There is no -- in the -- there's no village of police department legal counsel

D. WARNER

internally?

A.    I'm not sure 'cause -- maybe you can try to clarify that.  I know we have a labor counsel.

Q.    Okay.

A.    So would that be considered internal counsel?  'Cause they -- they do work for the -- for the police department.  But we do -- we do not have a separate attorney.  You know, there's also Bill Garry's office, you know, with lawsuits, so there are attorneys that we have access to that we could speak with.

Q.    Gotcha. Okay.  I -- I -- I think I got it.

A.    Okay.

Q.    I appreciate the clarification. Are there instances with -- with civilian complaints that are referred to the district attorney's office?

A.    There are instances where I know people can contact the district attorney directly instead of contacting us first. You know, we've had that.  You know,

D. WARNER

sometimes it could be something of a minor issue.

Q.    But are there occasions when the department refers the complaint to the district attorney's office?

A.    I just have not had direct experience doing that, so.

Q.    Okay.  Now, regarding Jack Guevrekian, you mentioned that you reviewed his personnel file?

A.    Mm-hmm.

Q.    Are you -- are you familiar with Jack Guevrekian?

A.    Yes.

Q.    Okay.  And how are you familiar with Jack Guevrekian?

A.    We've worked together on occasion.  He was a different squad than I was, but when I was a police officer, he was also a police officer.

Q.    Okay.  Were you ever a partner of Jack Guevrekian's?

A.    No.

Q.    Okay.  Now, in reviewing Jack

D. WARNER

Guevrekian's personnel file, did you come across any civilian complaints?

    A.    Yes.  I was skim -- I skimmed through it.  There was a complaint in there.  I'm trying to remember if that was a complaint or instead of just information.  You know what?  I'm going to hold that to a no.  I don't know if I read a complaint.  Like a new complaint that came in about Jack?

    Q.    Okay.

    A.    No.  No, I don't think so.  I was -- I was just quickly looking through it last night.

    Q.    Okay.

    A.    So.

    Q.    When you say "new complaint," what do you mean?

    A.    Like a -- just a complaint, you know?  'Cause I -- it's about a hundred pages, so I was skimming through it just -- just getting an idea what's in there.

    Q.    Are you referring to a -- a -- a

D. WARNER

lawsuit or are you --

A.    No.

Q.    -- referring to a civilian complaint?

A.    Just either.  I just don't -- no, I actually didn't see a complaint in there as I was going through it.

Q.    Okay.  With -- well, let me withdraw that.

Are you familiar with the hiring process that the police department uses?

A.    Yes.

Q.    Okay.  And has that process in any way changed that you're aware of?

A.    No.

Q.    Okay.  So -- well, withdrawn.

Do you know when the day -- Jack Guevrekian's date of hire was?

A.    It was in 2002, I believe.

Q.    Okay.  Do you know whether or not that -- the hiring process has ever changed since 2002?

A.    No.

Q.    Okay.  So what -- what -- if you

D. WARNER

can just give me a broad overview of what the department's hiring process is?

A.    Well, every police officer that works in Nassau County has to take the Nassau County Police test, the -- regardless of whether you work in law enforcement or elsewhere.  You take the test, you're graded.  Civil service, Nassau County Civil Service does a background investigation, any -- all aspects of your hiring.  Eventually, if you pass everything, we get notified.  We -- we contact civil service, who's eligible for hire.  They give us a list.  Probably if we ask for five names, ten names, they give us a list.  These people have been passed through the Nassau County Civil Service.  They're eligible for hire through Hempstead Police.

And then we then conduct an interview of those people.  We schedule interviews and they come in for an interview.  If they're City officers, we could hire them directly without them

D. WARNER

going to the academy again 'cause they're already State certified, so. We do like to hire New York City police officers 'cause it's direct. We can have them working quicker.

Q. Okay. So you're -- so the department is hiring off of the same list that Nassau County is hiring from?

A. That's correct, yeah.

Q. Okay. And any other department within Nassau County?

A. Yes. All villages and the two cities, yes.

Q. Okay. Now, you mentioned that civil service does a background check. Does the -- does the -- your department do its own background check?

A. No.

Q. So it exclusively relies on the civil services background check?

A. That's correct.

Q. Okay. Does the department conduct any sort of investigation of the candidates?

D. WARNER

A.    Through the interview.  We have an in-person interview with the candidate.

Q.    Okay.  And is there any record generated when that interview con -- is conducted?

A.    Yes.  We fill out a -- it's a handwritten form.  We fill it out, various questions about capability to be a police officer, things like that.  Prior employment.

Q.    And is that something that would be contained in the patrol officer's or the officer's file?

A.    Yes.

Q.    Do you know whether or not in -- in your review of Jack Guevrekian's personnel file whether or not there was an interview form in that -- in that file?

A.    Can't recall seeing it.

Q.    I'm just going to show you what we've previously marked as Plaintiff's Exhibit 1 and this was on the deposition that was conducted on May 9, 2024.  Chief, I'm just going to ask you to (handing) --

D. WARNER

if you could just review that form?

     A.    Okay.

     Q.    And then when you're done, you
know, just let me know.

     A.    (Perusing.)  Okay.

          MR. FERNANDEZ:  Dan, do you want
     to?

          MR. LECOURS:  I've seen it.  No
     thanks.

          MR. LAPINTA:  Can I see?

          MR. FERNANDEZ:  Yeah.

          MR. LAPINTA:  Thank you.  Thank
     you.

          MR. FERNANDEZ:  Here you go
     (handing).  I'll just wait until he's
     done.

          MR. LAPINTA:  (Perusing.)

          MR. LECOURS:  I have everything
     on my computer.  I can just pull 'em
     up here, make it easy for everybody.

     Q.    Now, is that the form you were
referring to?

     A.    It's similar --

     Q.    Do you recall?

D. WARNER

A. -- in structure. It looks different now, but that's the same type of information; candidate's name, date of birth. Yeah, it's -- it's -- it's revised.

Q. Now, this form pertains to Jack Guevrekian --

A. That's correct.

Q. -- correct?

A. I'm just saying currently, it -- it looks like --

Q. No, no. I -- I understand.

A. Okay.

Q. But that's not the form that was completed by the Village of Hempstead Police Department, correct?

A. I believe it is, yes. This was -- yeah, Chief Russo signed it here. I think that says ex -- I think -- I don't know if that says "Explained by Chief Russo" here. I'm not sure what that word is right there (pointing).

Q. And just reading from Paragraph 20 of the form on page three, yeah. It

D. WARNER

says "Explained by Chief Russo."

MR. FERNANDEZ: Right?

MR. LAPINTA: (Indicating.)

Q. Okay. So was this -- was this completed by Chief Russo, if you know?

A. Just because his name is on it, I would believe that to be the case 'cause he would be in the interview room with the candidate.

Q. Okay. Okay. Do you recognize the -- the name Captain Steven O'Brian?

A. No. He's not a Hempstead police officer.

Q. Okay. Do you know where or with which department Captain Steven O'Brian is?

A. Could I just see it one more time?

Q. Yeah. Yeah, absolutely (handing).

A. Where'd you see that?

Q. It's right up top.

A. Oh, right up top. Captain -- well, this is NYPD, PSA 3. I would assume

D. WARNER

that's where Jack worked before.  He was a
City police officer.

Q.    Okay.

A.    So that -- maybe that's his last
officer and commanding officer.

Q.    Understood.

A.    Yeah (handing).

Q.    Okay.  So if you know, did Chief
Russo conduct Jack Guevrekian's interview?

A.    Unable to say, but I would --
it -- typically, the chief would be there
for every interview.

Q.    Okay.  Apart from the chief,
would anybody else be sitting in on an
interview?

A.    At the time, we had inspectors.
The inspectors would be there as well.
Inspector Howe, Inspector Petri.

Q.    Okay.  And again, if you know,
any reason why the form is not or the
responses are not indicated in the form?

A.    Yeah.  I do not have an answer
to that, but that's something we -- we --
we had put a lot of effort to make sure

                    D. WARNER

it's completed properly, you know.

     Q.     Okay.

     A.     Or completely or, you know,
this -- I notice the whole page is blank
here.  That's --

     Q.     Referring to page two of the
form?

     A.     Yes.  Page two, yes.

     Q.     Okay.

     A.     (Handing.)

     Q.     I mean, is that something that
would be important --

            MR. LECOURS:  Objection.

     Q.     -- to complete?

            MR. LECOURS:  Objection to form.
     You can answer.

     A.     Can you repeat the question?

     Q.     Sure.  Is that -- is that -- is
it important to complete and -- and write
out the responses to these questions?

     A.     Yes.

            MR. LECOURS:  Objection to form.

     Q.     And why -- why is it important,
Chief?

D. WARNER

A.    If we have to refer back to it, it would be important for us to know answers to the questions that are listed on the report.

Q.    Okay.  Now, in your review of Jack Guevrekian's personnel file -- personnel file, do you know whether or not he was under investigation by the NYPD when he was -- when he was a candidate for the Village of Hempstead's Police Department?

A.    I'm not aware of that, no.

Q.    If -- if he had been under investigation by the New York City Police Department, would Jack Guevrekian have been considered for hire by the Village of Hempstead?

MR. LECOURS:  Objection to form.

MR. LAPINTA:  Note my objection to the question.

MR. LECOURS:  You can answer.

A.    My experience now, we have all pending cases closed out if there are any with an officer before we hire them.

D. WARNER

Q. Okay. And that's presently?

A. That's correct.

Q. Okay. But at the -- at the time when Jack Guevrekian was hired, what was the practice of the Village of Hempstead Police Department, if you know?

A. I do not know.

Q. Okay. Would there have been an indication in the form that Jack Guevrekian was under Internal Affairs investigation within -- within this -- this interview form?

A. Currently, we would want to see that and I would assume it was the same back then.

Q. I -- I don't want you to assume. If you know --

A. I just don't know.

Q. -- just let me know you don't know. I don't want you to take --

A. Sorry.

Q. -- any guesses.

A. Okay.

Q. Okay? But in your view, that

D. WARNER

should have been noted somewhere whether
or not he was under investigation at the
time of hire?

A.    Yes.

Q.    Okay.  And in reviewing Jack
Guevrekian's personnel file, did you find
any indication that he -- whether he was
or not under investigation by Internal
Affairs at NYPD when he was hired?

A.    No.

Q.    Okay.  Now, you -- you stated
that presently, you would want that --
that Internal Affairs investigation to be
closed out, correct?

A.    Yes.

Q.    Okay.  And would it -- would it
also be the case that you would want to
have an unfounded determination with
regards to that Internal Affairs
investigation?

A.    Either unfounded or closed would
be fine.

Q.    Okay.  So would it -- would a
founded investigation have any -- any

D. WARNER

bearing on the hiring of the candidate?

A. Potentially, yeah. We would see what it -- what it is. I mean, if it's something minor or something, but something serious, it would be a concern for us --

Q. Okay.

A. -- you know.

Q. And when you say "something serious," what do you -- what do you mean?

A. Can't think of an example off the top of my head, but something that would mean down the road lawsuits or further trials or investigations into some activity.

Q. Okay. And that's presently?

A. Correct.

Q. Okay. Now, given that Jack Guevrekian came over from the NYPD, to your knowledge, did he have to attend the academy?

A. No, he did not.

Q. Okay. If you know, at the time of Jack Guevrekian's hire, was his

D. WARNER

personnel file requested from NYPD?

A.   No.

Q.   If you know, does Hempstead Police Department make a request for the personnel -- personnel file of an officer that it intends to hire?

A.   No.

Q.   And I'm referring to only individual candidates coming over from a different department.

A.   What Nassau County Civil Service would do, they may request that, but we do not.

Q.   Does the police department ask to review that personnel file?

A.   Hempstead Police?

Q.   Yes.

A.   I have no experience in doing that, no.

Q.   Okay.  Presently or in the past?

A.   Correct.

Q.   Okay.  I know you mentioned that presently, you would want the Internal Affairs investigation concluded prior to

D. WARNER

hiring a candidate coming over from a --
a -- a different department, and I
apologize if you answered already, but was
that the practice also back in 2002 with
the department, if you know?

A.    I'm not aware.

Q.    Okay.  Now, I'm just going to --
going to have to mark this as --

MR. LECOURS:  Are we continuing
numbering or?

MR. FERNANDEZ:  What's that?

MR. LECOURS:  Are we continuing
numbering or are we starting anew?

MR. FERNANDEZ:  I'm going to
have to start anew because --

MR. LECOURS:  Yeah.

MR. FERNANDEZ:  -- I think I --
I think I'm beyond Exhibit 5 and I
don't want to --

MR. LECOURS:  Yeah, that's fine.

MR. FERNANDEZ:  -- screw that up
and I'll just mark it as Plaintiff's 1
for today's deposition.  I'm just
going to take a moment and I'm going

D. WARNER

to make a copy of this so everybody has one.  Excuse me.

(A discussion was held off the record.)

[The document was hereby marked as Plaintiff's Exhibit 1 for identification, as of this date.]

Q.    Chief, showing you what we've marked as Plaintiff's 1 for today's deposition.

A.    Okay.

Q.    I'll just ask if you could just review it and when you're done reviewing that document, just let me know.

A.    (Perusing.)  Okay.

Q.    Okay.  In your review of Jack Guevrekian's personnel file, did you come across that complaint?

A.    Yeah.  I want to correct myself. Yes, I did see this last night.

Q.    Okay.

A.    When I skimmed through the file, yes.

Q.    Do you know whether or not the

D. WARNER

department conducted an investigation with regards to this complaint?

A. Procedurally-wise, they would. I just don't have firsthand knowledge that they did.

Q. Okay. And when you say "procedurally," what would have -- would have been -- what would have happened?

A. The chiefs would be notified. They would contact our, again, legal, and then they would probably at some point contact the -- the -- the officer and the union rep and they would be brought in to have an investigation to this matter and this allegation.

Q. Okay. And would there have been a record of each step taken with regards to that complaint?

A. I'm not sure what they did at this time, how they handled it, you know, but we would do that now.

Q. Okay. When there was a -- when there was a referral to the chiefs, would that been through an e-mail communication,

D. WARNER

an interdepartmental memo, or something else if you know?

A. I don't know how this was handled. Typically, it would be verbally initially and then that whole process would start after that.

Q. Okay. Would there be any record generated or document generated by the chiefs of their investigation?

A. Unknown.

Q. Okay. Would there be a -- well, withdrawn.

At the conclusion of the investigation, what, if anything, would be done with regards to this particular complaint?

A. There would be a determination if it was -- it was founded, it was believed and the officer could face punishment and from whatever aspect; loss of time, loss of employment. It could be anything at that, you know, once it -- this all came to be a valid complaint. This is --

D. WARNER

Q.    Okay.

A.    -- a substantial complaint, you know, it's...

Q.    Now, would there be a record of that determination within Jack Guevrekian's personnel file?

A.    Yes.

Q.    Okay.  Did you see any -- anything with regards to the -- that investigation or the conclusion of that investigation within Jack Guevrekian's personnel file?

A.    I do not recall seeing that.

Q.    Would it have been maintained somewhere else other than Jack Guevrekian's personnel file?

A.    No.  It would stay in the file.

Q.    Okay.  Would there be a -- an electronic record of that determination within the Hempstead Police Department?

A.    Anytime someone faces a discipline and they're -- it's founded, it's a -- it's a -- it's a document.  It says "Departmental Charges" on top and

D. WARNER

it's a witness signed by the attorney, the officer, and the PBA representative and that would be in the file.

Q. Okay. And what is -- is there a name for that document or is that document --

A. It's departmental -- it's Departmental Charges.

Q. Do you recall whether or not there was such a record within Jack Guevrekian's personnel file?

A. I do not recall seeing that.

Q. Okay. Now, are you familiar with Officer Mazza?

A. Yes.

MR. LAPINTA: Who?

MR. FERNANDEZ: Mazza. M-A-Z-Z-A.

Q. I believe his first name is Patrick, correct?

A. That's correct, yeah.

Q. Okay. Are you aware that per Officer Mazza, he brought to the attention of a supervisor a similar complaint?

D. WARNER

MR. LECOURS: Objection to form. You can answer.

A. No.

Q. Okay. Within Jack Guevrekian's personnel file, did you see any complaints or referrals by Officer Mazza regarding this female, Victoria?

A. No.

Q. Within Jack Guevrekian's personnel file, did you see any references to a -- a -- a complaint or an accusation made by Officer Mazza regarding Jack Guevrekian?

A. No.

Q. Are you familiar with a Sergeant Montero (phonetic)?

A. Yes.

Q. Okay. Is Sergeant Montero retired or still in service?

A. It's -- it was Sergeant Montera with an A.

Q. Sorry.

A. Yeah.

Q. Thank you.

D. WARNER

A.    I do like Montero, but that's -- he retired as a lieutenant here at Hempstead Police Department.

Q.    Okay.  When did he retire if you know?

A.    I would say approximately four years ago.

Q.    Okay.  Within Jack Guevrekian's personnel file, did you see any -- any complaints filed by a Sergeant Montera?

A.    No.

Q.    Within Jack Guevrekian's personnel file, did you see any complaints brought by Sergeant Montera referencing a Victoria at 293 East Columbia Street?

A.    No.

Q.    If a patrol officer brings to the attention of a supervisor improper conduct or alleged improper conduct by another officer to a supervisor, what is that supervisor's obligation with respect to that complaint?

MR. LECOURS:  Objection to form. You can answer.

D. WARNER

A. Okay. If there's a complaint of that nature, we -- we -- we do a better job documenting everything now. So we -- we -- we take their initial complaint in, usually some form of a statement. Again, it's -- it's kept, but it'll go into an investigation file which will end up in the -- the member's file after the investigation's completed, but that's -- it's -- it's documented. The complaint is documented, so simple as that.

Q. Okay. Now, well, what about in 2004? What would have been the obligation of the supervisor, if you know?

MR. LECOURS: Objection to form. You can answer.

A. I think the -- the obligation of the supervisor is to investigate the incident to find out if it's -- has any -- if it's material, if it's valid, if the, you know, if there's any substance to it, they would look into it. And I think there has to be a determination from what they found, you know, if they do the

D. WARNER

investigation or it's referred over to somebody else.

Q. Would that investigation be documented anywhere?

A. I couldn't say what they were doing in 2004.

Q. Okay. Well, let's say officer -- in the case of Officer Mazza, Officer Mazza makes an allegation of receiving a complaint by a civilian regarding Jack Guevrekian. He passes that complaint or the allegation of impropriety to Sergeant Montera.

A. Okay.

Q. What is Sergeant Montera's obligation with regards to that complaint?

MR. LECOURS: Objection to form.

MR. LAPINTA: Objection to the form.

MR. LECOURS: You can answer.

A. Okay. Sergeant Montera I would -- I would say would contact the chief's department immediately and the chief's department would be informed and

D. WARNER

that would initiate an investigation into the allegation and a review of the facts, you know, in question.

Q.    Was that the process in place back in 2004?

A.    I was not familiar with what they did in '04, but to my knowledge, nothing has changed.  Right now, we would -- what we would do is what I just mentioned:  We would take that information, we would have either -- we can have -- assign a detective to look into the matter or a supervisor to look into the matter and the chief's office would make sure that it was thoroughly investigated so we can make a determination.

Q.    Okay.  Would there have been a record of that investigation?

A.    I -- I -- again, I would say for now, yes, there would be one now.  There would definitely be one now.

Q.    In 2004?

A.    I'm not sure of the procedure,

D. WARNER

how they did it back then.

Q.    Okay.  Within Jack Guevrekian's personnel file that you reviewed, did you find any such records?

A.    No.

Q.    Okay.  I'm going to show you what was previously marked as Plaintiff's Exhibit 3 at the 5/9/24 deposition.  It's Bates stamped document HPD-000021.

MR. FERNANDEZ:  I'll show it to you guys first (handing.)

MR. LECOURS:  Yeah, I'm aware.

MR. FERNANDEZ:  (Handing.)

MR. LAPINTA:  (Perusing.)  Okay. Thank you (handing).

Q.    (Handing.)  So I'll just ask you to take a look at that and when you're ready, Chief, just let me know.

A.    (Perusing.)  Okay.

Q.    In reviewing -- you can keep it. In reviewing Jack Guevrekian's personnel file, did you come across that document?

A.    Yes.

Q.    Okay.  Other than that letter,

D. WARNER

was there anything else within the personnel file referencing this referral?

A.     I did read this last night.  I don't recall anything else regarding this.  Actually, I was surprised to see that, actually, but I -- I read this last night.  That's it.  I don't recall anything else.

Q.     Okay.  And when you say you're surprised to see that, why -- why are you surprised?

A.     Well, I just didn't know this was in his file.

Q.     I'm sorry?

A.     I did -- I did not know this was in his file, that there was this test, if you will, or this evaluation, so.

Q.     Do you know -- do you know the facts or circumstances surrounding that referral?

A.     I would believe it's in connection to -- to the incident there if I could just double-check the dates, if I could?

Q.     Sure (handing).  And just

D. WARNER

showing the witness Exhibit 1 for today's deposition.

A.     Yeah.  This looks like it was October, this one is December, so when I read them, I figured it was in relation to this event (pointing) is why he was sent to some form of -- to see a psychiatrist.

Q.     Now, the letter references that there was no -- there was no background or context provided for the psych referral.  Do you see that in the letter?

A.     Yes, I do.

Q.     Why is that?

A.     I do not have an answer.

Q.     If it's in relation to the complaint in Plaintiff's Exhibit 1 of today, wouldn't the complaint have been sent over to the doctor?

A.     I would -- I -- again, I don't know what they did then, but I would -- I would have thought that would have gone over to generate this, to start this, so.  But I -- but reading this, apparently they did not have that or anything related to

D. WARNER

it.

Q.    Okay.  And again, referring to Plaintiff's Exhibit 1.  Was there any -- was there any document or memo within Jack Guevrekian's personnel file indicating what the disciplinary action, if any, was related that -- that related to the complaint referenced in Plaintiff's Exhibit 1 of today?

A.    I did not see any.

Q.    Do you know whether or not Jack Guevrekian received any disciplinary action or administrative action regarding the complaint referenced in Plaintiff's Exhibit 1 of today?

A.    I didn't see anything related to that.

Q.    Do you know whether or not there was a referral made to the Nassau County District Attorney's Office in reference to the complaint referenced in Plaintiff's Exhibit 1 of today?

A.    Yes.

Q.    Okay.  And how are -- how are

D. WARNER

you aware of that?

A.    I spoke to Chief Holland last night because I wasn't familiar with many of the factors going on with this case and I said, "How did we become aware of it?" And he mentioned that the district attorney initiated the investigation.

Q.    Okay.  And do you know what the outcome of that investigation was?

A.    No.  Let me just think about it a second.  Nothing else.  I'm just -- bear with me.  I'm just thinking.  I believe the district attorney eventually determined it was unfounded.

Q.    Okay.

A.    Yeah.

Q.    And do you know how that was communicated to the department?

A.    I would like to see if there's anything in his file with that.  I don't recall seeing it in the file, but we would be notified by the district attorney's office that their investigation has been concluded.

D. WARNER

Q.    Okay.

A.    So.

Q.    And would that have been through a memo, e-mail, or something else?

A.    They -- they would send some form of a letter regarding that.

Q.    Okay.  Now, as the Nassau County District Attorney's Office investigation was ongoing with regards to the complaint referenced in Plaintiff's Exhibit 1 of today, would the -- would the department be conducting its own concurrent investigation?

A.    No.  If the -- if the DA is doing their own investigation, we would let them complete it and then go from there.

Q.    Okay.  Well, did the depart -- at the conclusion of the Nassau County District Attorney's Office investigation, did the Hempstead Police Department conduct its own investigation?

A.    I'm not aware of any investigation that Hempstead Police

D. WARNER

Department conducted.

Q.    Okay.  If had -- if the department had conducted its own investigation, would that be contained within Jack Guevrekian's personnel file or would it be elsewhere?

A.    In his personnel --

MR. LAPINTA:  Objection -- one second.

THE WITNESS:  Oh.  Sorry, sir.

MR. LAPINTA:  Objection to the question.  You may answer.

THE WITNESS:  Okay.

A.    Yes, it would.  Everything would go in his file.

Q.    So any -- any documents, any memos, any determinations regarding that investigation would be within Jack Guevrekian's personnel file?

A.    Yes.

Q.    Okay.  Now, with regards to -- well, withdrawn.

Were you the assist -- were you assistant chief when Jack Guevrekian

D. WARNER

retired or did you hold a different rank?

A.    Jack retired in, what was it, '18?  It was 2018?

Q.    Let me get to that then.

A.    I'm trying to think.

Q.    It's okay.  I'll show what we've previously designated as Plaintiff's Exhibit 2 from the May 9, 2024 deposition.

MR. FERNANDEZ:  I'm going to show that to the witness (handing).  Dan, I don't know if you want to see that.

A.    Oh, '20?  (Perusing.)

MR. LAPINTA:  Oh, will you make copies of those?

MR. FERNANDEZ:  I'm going to make, yeah, of everything.

MR. LAPINTA:  Okay.

MR. FERNANDEZ:  Yeah, absolutely.

A.    Yeah.  I think I was just coming over to the chief's office at this time.  I don't remember if it was before or after.  Let me see.  Chief Johnson.  Also,

D. WARNER

if Chief Johnson was still there, then I wasn't over there yet. Yeah. So this is just before I went over there. I could double-check all my dates when I transferred, but yeah, there's --

Q. It's okay.

MR. FERNANDEZ: (Handing.)

MR. LAPINTA: (Perusing.)

(Handing.)

Q. Okay. Does -- Chief, does that help refresh your recollection as to when Jack Guevrekian retired?

A. Yes. It has a date here, effective January 17th of '21.

Q. Okay. And at the time of Jack Guevrekian's retirement, were you -- did you hold the office of the assistant chief at that time?

A. No.

Q. Okay. If you know, then, do you know whether or not Jack Guevrekian was under investigation when he retired?

A. I do not know.

Q. Okay. And again, if you know,

D. WARNER

had Jack Guevrekian been under investigation, would his retirement been accepted?

A. Not --

MR. LAPINTA: Objection to form.

MR. LECOURS: Same objection. You can answer.

THE WITNESS: Okay. I was waiting for that part. Okay.

MR. LECOURS: Yeah. You can answer.

A. Yeah, if there's a -- if there's a pending investigation, they could -- your retirement could be delayed.

Q. Okay.

A. Or not accepted.

Q. Are you -- withdrawn. Prior to Jack Guevrekian's request for retirement, were you aware that he was under investigation by the Nassau County District Attorney's Office?

A. I became aware after he was retired.

Q. Prior to Jack Guevrekian's

D. WARNER

request for retirement, were you aware that Carol McGuire had made accusations against Jack Guevrekian?

A.    No.

Q.    Okay.  Were you aware that Carol McGuire had made accusations against Jack Guevrekian regarding sexual assault?

A.    No.

Q.    Okay.  When did you become aware that those accusations were made by Carol McGuire?

A.    I'm not familiar with the person directly, the -- the plaintiff --

Q.    Understood.

A.    -- but I became aware that there was an investigation in regards to her allegations.  I became aware of that I believe just -- just after he retired, you know.  It might have been just before, it might have been just after, but sometime around that time, you know, 'cause I was not in the administration at that point, so I was actually in a different building, but, the Army building, but, you know,

D. WARNER

not -- I wasn't given any information regarding the investigation at that time, so.

Q. Okay.

A. Yeah.

Q. Do you know whether or not Hempstead Police Department conducted an investigation into those allegations of Carol McGuire?

A. I'm not -- I don't -- I didn't have any firsthand information of what they did regarding that, but if they received it, they would go through that process, you know, look into the matter, collect the facts, contact legal, you know, and so forth.

Q. Okay. Would that have been something that would have been contained in Jack Guevrekian's personnel file?

A. Yeah.

Q. Okay. And I'm sorry. You said that the first time you became aware of Carol McGuire's allegations was when? I'm sorry, Chief.

D. WARNER

A.    I would say I -- I became aware that there was an overall investigation regarding Jack sometime around this time, you know.  I didn't know the plaintiffs' names, but I did know there was an investigation going on about, you know, the allegations, so I would say sometime, looking at this, in 2021.  Sometime around there.

Q.    Okay.  Other than the -- no, withdrawn.

Had you had -- had you or are you aware of any other allegations against Jack Guevrekian regarding allegations similar in nature of those made by Carol McGuire?

A.    No.

Q.    Are you familiar with Regina -- the name Regina Pruitte?

A.    No.

Q.    Okay.  Are you aware that Regina Pruitte made similar sorts of allegations against Jack Guevrekian?

A.    I couldn't tell you anyone who

D. WARNER

filed an allegation against Jack.  I just know it involved several women.  That's what I know, so.

Q.    Okay.  Have you or have -- or have you seen or have you reviewed any of the complaints filed in civil court against Jack Guevrekian?

A.    No.

Q.    Have you seen or -- withdrawn.

Have you reviewed Carol McGuire's civil complaint?

A.    No.

Q.    Have you reviewed Regina Pruitte's civil complaint?

A.    No.

Q.    Okay.  What about Kristin Wilke's civil complaint?

A.    I have not.

Q.    What about Jennilee Tooher's civil complaint?

A.    No.

Q.    Have you reviewed that?

A.    No.

Q.    Okay.  Are you familiar with

D. WARNER

those two individuals?

A. No.

Q. Okay. What about Jayne Fisher's civil complaint? Did you review that?

A. No, I have not.

Q. Okay. Other than the complaint -- withdrawn.

Other than the allegations referenced in Plaintiff's Exhibit 1 of today's deposition, are you aware of any other such allegations against Jack Guevrekian?

A. No, that's it.

Q. Okay.

A. Yeah.

Q. Chief, did you review the Village of Hempstead's answer to Carol McGuire's civil complaint?

A. No, I did not, no.

Q. Okay. Same question with regards to the answer of the Village of Hempstead, and I should correct, Village of Hempstead, Police Chief Paul Johnson, and filed in -- in the Regina Pruitte

D. WARNER

civil compliant.  Have you reviewed that document?

A.     No, I have not.

Q.     I'm going to just show Plaintiff's Exhibits 4 and 5 of a deposition taken on -- on May 5, 2024, which are the answers to the amended complaint of Carol McGuire and Regina Pruitte.

MR. FERNANDEZ:  Do you guys want to?

MR. LAPINTA:  (Indicating.)

MR. LECOURS:  I have the exhibits, so.

MR. FERNANDEZ:  Okay.

Q.     (Handing.)  Chief, I'm just going to ask you to review those documents and when you're -- when you're ready, just let me know.

A.     Okay.  (Perusing.)  Okay.  I see the response here from the attorneys regarding, so I guess they're very similar or you want me to review this one as well?

Q.     Yeah, please just.

D. WARNER

A.    (Perusing.)  All right.  Okay.
All right.

Q.    Prior to today's deposition, had
you ever seen those two documents before?

A.    No.

Q.    Okay.  Prior -- well, withdrawn.
Did you have any role in
assisting your attorneys in preparing
those two documents?

A.    No.

Q.    Okay.  Do you know who did?

A.    I see Paul Johnson's in here, so
I would assume they would have given --

Q.    Again, don't assume any --

A.    Don't assume.  Take it back,
throw it out.  No, I do not.

Q.    If you don't know, just tell me
"I don't know."

A.    I don't know.

Q.    Okay.  All right.  Thank you.
Just a couple more things and I think I'm
pretty much going to wrap it up.  I'm just
going to show you again what we -- had
been previously marked as Plaintiff's 3

D. WARNER

from the 5/9/2024 deposition (handing).

A.    Yes.

Q.    The letter -- the letter there from -- from the doctor there indicates that there's a recommend -- or there's a recommendation in there that Jack Guevrekian be given additional supervision.  Do you see that there in the letter?

A.    Yes.

Q.    Okay.  In having reviewed Jack Guevrekian's personnel file, was there any reference made that Jack Guevrekian did, in fact, have additional supervision after this recommendation?

MR. LAPINTA:  Hold on.  Objection to the question.  You can answer it.

A.    Okay.  I'm not aware of any additional supervision or training that he was given.

Q.    The letter also references that there were two -- two interviews conducted of Jack Guevrekian.  Do you see that?

D. WARNER

A.     Yeah, he was administered -- yeah, two interviews.  I assume by the doctor.

Q.     Do you know -- well, withdrawn.

In reviewing Jack Guevrekian's personnel file --

MR. LAPINTA:  Let me just state for the record, I'm going to object to that answer as nonresponsive.  He was reading from the document.  Just re-ask the question, if you could.

MR. FERNANDEZ:  Sure.

Q.     So in the letter, there's a reference made to two interviews being conducted of Jack Guevrekian.  Do you see that?

A.     Yes, I do.

Q.     Okay.  In reviewing Jack Guevrekian's personnel file, did you see any reports or any documents regarding those two interviews conducted by this institute?

A.     No.

Q.     Okay.  Thank you.

D. WARNER

A.     You're welcome (handing).

Q.     Okay.  Chief, I appreciate your time.  Thank you for coming in.  I don't have any other questions.

THE COURT REPORTER: Mr. LaPinta?

MR. LAPINTA:  Nothing.

MR. LECOURS:  No questions from me.

THE COURT REPORTER:  Will you be ordering a copy of the transcript?

MR. LAPINTA:  No.

[TIME NOTED:  11:14 a.m.]

_____
DEREK WARNER


Subscribed and sworn to before me

this __ day of _____, 2025.


_____
Notary Public

I N D E X

WITNESS          EXAMINATION BY          PAGE

DEREK          PABLO FERNANDEZ          5
WARNER

E X H I B I T S

| PLAINTIFF'S | DESCRIPTION | PAGE |
|---|---|---|
| EXHIBIT 1 | HPD-000023 | 41 |
| PM EXHIBIT 1 (PREVIOUSLY MARKED) | HPD-000072 - HPD000075 | 29 |
| PM EXHIBIT 2 (PREVIOUSLY MARKED) | HPD-000004 | 58 |
| PM EXHIBIT 3 (PREVIOUSLY MARKED) | HPD-000021 | 51 |
| PM EXHIBIT 4 (PREVIOUSLY MARKED) | ANSWER TO AMENDED COMPLAINT - CAROL MCGUIRE CASE | 66 |
| PM EXHIBIT 5 (PREVIOUSLY MARKED) | ANSWER TO AMENDED COMPLAINT - REGINA PRUITTE CASE | 66 |

### CERTIFICATION

I, MELISSA COREAS, a Shorthand Reporter and Notary Public for and within the State of New York, do hereby certify:

That the witness whose testimony as herein set forth, was duly sworn by me; and that the within transcript is a true and accurate transcription of my stenographic notes.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

MELISSA COREAS

ERRATA SHEET
VERITEXT LEGAL SOLUTIONS

CASE NAME:  CAROL MCGUIRE, et al. vs.
VILLAGE OF HEMPSTEAD, et al.
DATE OF DEPOSITION:  MARCH 7, 2025
WITNESS' NAME:  DEREK WARNER

PAGE/LINE(S)/        CHANGE                REASON
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____

_____
        DEREK WARNER

SUBSCRIBED AND SWORN TO
BEFORE ME THIS_____DAY
OF_____, 20 .

_____
    NOTARY PUBLIC
MY COMMISSION EXPIRES_____

## &

**&** 3:16

## 0

**000004** 71:11
**000021** 51:10
 71:12
**000023** 71:9
**000072** 71:9
**02117** 1:4
**03671** 1:15
**04** 50:8

## 1

**1** 29:23 40:23
 41:7,10 53:2
 53:17 54:4,10
 54:16,23 56:11
 65:10 71:9,9
**1-5** 1:11,22
**11530** 3:5
**11550** 5:17
**11553** 3:13
**11788** 3:19
**11:14** 70:14
**15** 7:9
**17** 3:19
**17th** 59:15
**18** 58:4
**18613** 72:21
**19** 13:21

## 2

**2** 58:9 71:11
**20** 12:12 13:5,6
 31:25 58:14
 73:22
**200** 3:18
**2000** 10:7,16
**2002** 26:20,23
 40:5
**2004** 48:14
 49:7 50:6,24
**2011** 14:15
**2015** 14:11,16
**2018** 58:4
**2021** 13:2 63:9
**2022** 12:12
 13:7
**2024** 29:24
 58:9 66:7
**2025** 2:3 70:21
 73:4
**21** 59:15
**22** 12:13,17
**24** 7:5
**29** 71:9
**293** 47:16
**2:20** 1:4
**2:22** 1:15

## 3

**3** 32:25 51:9
 67:25 71:12
**333** 3:12

## 4

**4** 66:6 71:14
**400** 2:2 3:4
**41** 71:9

## 5

**5** 40:19 66:6,7
 71:4,15
**5/9/2024** 68:2
**5/9/24** 51:9
**500** 3:5
**51** 71:12
**58** 71:11

## 6

**66** 71:14,15

## 7

**7** 2:3 73:4

## 9

**9** 29:24 58:9
**901** 3:12
**99** 5:14
**9:53** 2:4

## a

**a.m.** 2:4 70:14
**ability** 6:25
 19:10
**above** 2:8,8
**absolutely**
 32:20 58:21
**academy** 10:18
 10:20,22,24
 11:3,5,8 28:2

38:22
**accepted** 60:4
 60:17
**access** 23:13
**accurate** 72:10
**accusation**
 46:12
**accusations**
 61:3,7,11
**act** 22:2
**action** 1:4,15
 2:8 7:17,19
 8:18 54:7,14
 54:14 72:14
**activity** 38:16
**actually** 14:15
 26:7 52:6,7
 61:24
**added** 18:25
**additional** 68:8
 68:15,21
**address** 5:12
**administered**
 69:2
**administration**
 15:2 61:23
**administrative**
 12:3 54:14
**affairs** 20:22
 21:2,8 22:7
 36:11 37:10,14
 37:20 39:25
**affect** 6:25

**ago** 7:9 47:8
**agreed** 4:3,8,12
**al** 73:3,4
**alcohol** 7:4
**allegation** 42:16 49:10,13 50:3 64:2
**allegations** 61:18 62:9,24 63:8,14,15,23 65:9,12
**alleged** 47:20
**amended** 66:8 71:14,15
**anew** 40:14,16
**answer** 6:6,17 33:23 34:17 35:22 46:3 47:25 48:17 49:21 53:15 57:13 60:8,12 65:18,22 68:19 69:10 71:14,15
**answered** 40:4
**answers** 35:4 66:8
**anthony** 3:20
**anybody** 33:15
**anytime** 44:22
**apart** 33:14
**apologize** 40:4
**apparently** 53:24

**appearances** 3:2
**appreciate** 23:18 70:3
**approximately** 12:11 13:4,12 13:25 14:8 47:7
**armed** 10:14
**army** 61:25
**aspect** 43:21
**aspects** 27:12
**assault** 61:8
**assign** 50:13
**assigned** 20:13 20:14
**assist** 57:24
**assistant** 11:23 11:24,25 12:8 12:9,15,19 16:5,20 20:16 57:25 59:18
**assisting** 67:9
**associated** 17:13
**assume** 32:25 36:15,17 67:14 67:15,16 69:3
**attaining** 12:18
**attend** 10:21 38:21
**attention** 45:24 47:19

**attorney** 9:6,8 23:11,23 45:2 55:8,14
**attorney's** 23:21 24:6 54:21 55:23 56:9,21 60:22
**attorneys** 3:4,9 3:17 18:16 22:19,20 23:13 66:22 67:9
**aware** 15:20 19:17 26:15 35:13 40:7 45:23 51:13 55:2,6 56:24 60:20,23 61:2 61:6,10,16,18 62:23 63:2,14 63:22 65:11 68:20

**b**

**b** 71:7
**back** 35:2 36:16 40:5 50:6 51:2 67:16
**background** 27:11 28:16,18 28:21 53:10
**basic** 18:8
**bates** 51:10

**beach** 3:9
**bear** 55:12
**bearing** 38:2
**began** 14:13 19:19
**believe** 19:22 26:20 31:18 32:8 45:20 52:21 55:13 61:19
**believed** 43:20
**best** 22:11
**better** 48:3
**beyond** 40:19
**bias** 21:16
**bill** 23:11
**birth** 31:5
**bit** 12:24
**blank** 34:5
**blood** 72:14
**boulevard** 3:12
**break** 6:15,19
**brings** 47:18
**broad** 27:2
**brought** 42:14 45:24 47:15
**building** 61:24 61:25
**bureau** 20:22 21:8 22:7

**c**

**c** 3:19

call 19:3
candidate 29:3
  32:10 35:10
  38:2 40:2
candidate's
  31:4
candidates
  28:25 39:10
capability 29:9
capacities 1:12
  1:22
captain 32:12
  32:16,24
caption 7:19
career 8:10
  19:19
carol 1:6 5:23
  9:10 61:3,6,11
  62:10,24 63:16
  64:11 65:18
  66:9 71:14
  73:3
caronia 3:16
carries 18:6
case 32:8 37:18
  49:9 55:5
  71:15,17 73:3
cases 35:24
cause 23:3,8
  25:21 28:2,5
  32:8 61:22
certification
  4:6 72:2

certified 28:3
certify 72:6,12
change 19:17
  20:19 73:6
changed 19:15
  19:23 26:15,23
  50:9
charges 44:25
  45:9
check 28:16,18
  28:21 52:23
  59:5
chief 1:10,20
  3:11 5:20
  11:23,25 12:8
  12:9,15,19,21
  12:23 13:10
  14:23,24,25
  15:22 16:3,4,5
  16:6,15,20
  20:16,20 29:24
  31:19,21 32:2
  32:6 33:9,12
  33:14 34:25
  41:9 51:19
  55:3 57:25
  58:25 59:2,11
  59:18 62:25
  65:17,24 66:17
  70:3
chief's 49:24,25
  50:15 58:23
chiefs 16:9 20:7
  42:10,24 43:10

circumstances
  52:19
cities 28:14
city 2:2,2 3:4,5
  27:24 28:4
  33:3 35:15
civil 1:4,15
  18:19 27:9,10
  27:14,19 28:16
  28:21 39:12
  64:7,12,15,18
  64:21 65:5,19
  66:2
civilian 23:19
  25:3 26:4
  49:11
clarification
  23:18
clarify 23:4
clear 22:23
close 14:10
closed 35:24
  37:15,22
code 5:16
collect 18:8
  20:8 62:16
college 9:15
columbia 47:16
combination
  17:22
come 18:22
  21:9,11 25:2
  27:23 41:18
  51:23

coming 39:10
  40:2 58:22
  70:4
commanding
  33:6
commence 10:5
commenced
  14:13
commencing
  10:8
commission
  73:25
communicated
  55:19
communication
  42:25
complainee
  21:10
complaint
  15:12,19 18:7
  18:23 19:2,10
  19:25 20:3,9
  20:15 21:6,25
  24:5 25:5,7,10
  25:10,18,20
  26:5,7 41:19
  42:3,19 43:17
  43:24 44:3
  45:25 46:12
  47:23 48:2,5
  48:11 49:11,13
  49:17 53:17,18
  54:9,15,22
  56:10 64:12,15

64:18,21 65:5 65:8,19 66:9 71:14,16

**complaints** 8:17 15:4,9,9 15:17,24 18:20 23:20 25:3 46:6 47:11,14 64:7

**complete** 9:20 11:5,11,17 34:15,20 56:17

**completed** 31:16 32:6 34:2 48:10

**completely** 34:4

**compliance** 12:4

**compliant** 66:2

**computer** 30:20

**con** 29:5

**concern** 38:6

**concluded** 39:25 55:25

**conclusion** 43:14 44:11 56:20

**concurrent** 56:13

**condition** 15:12

**conduct** 15:23 27:21 28:24

33:10 47:20,20 56:23

**conducted** 29:6 29:24 42:2 57:2,4 62:8 68:24 69:16,22

**conducting** 56:13

**conflicts** 21:4

**connection** 52:22

**considered** 23:7 35:17

**consumed** 7:4

**contact** 18:11 19:5 21:11 22:10 23:23 27:14 42:11,13 49:23 62:16

**contacting** 23:24

**contained** 8:17 8:21 29:13 57:5 62:19

**context** 53:11

**continuing** 40:10,13

**conversation** 18:10

**conversations** 22:9

**copies** 58:16

**copy** 41:2 70:12

**coreas** 2:10 72:4,22

**correct** 8:15 9:24 10:19 13:8 16:25 17:11 20:23 28:10,22 31:9 31:10,17 36:3 37:15 38:18 39:22 41:20 45:21,22 65:23

**counsel** 2:12 4:4 22:15,17 22:25 23:5,8

**county** 11:3 20:25 21:7 22:6 27:5,6,10 27:18 28:9,12 39:12 54:20 56:8,20 60:22

**couple** 67:22

**court** 1:2,14 4:16 5:7 64:7 70:6,11

**credits** 9:19

**criminal** 18:17 22:2

**currently** 31:11 36:14

**cv** 1:4,15

**d**

**d** 5:2,10 6:1 7:1 8:1 9:1 10:1

11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 66:1 67:1 68:1 69:1 70:1 71:2

**da** 56:15

**daily** 14:25

**dan** 30:7 58:12

**daniel** 3:14

**date** 8:13,14 10:17,17 26:19 31:4 41:8 59:14 73:4

**dates** 52:23 59:5

**day** 15:16 26:18 70:21 73:22

**december** 53:5
**decision** 20:10
**defendant** 3:17
**defendants** 1:13,23 3:9
**definitely** 50:23
**delayed** 60:15
**depart** 56:19
**department** 1:9 1:20 3:10 8:11 10:3,10 11:22 16:16 17:20,21 18:4,11,20 19:11,21 20:13 20:21 22:10,14 22:16,19,25 23:9 24:5 26:12 28:8,11 28:17,23 31:17 32:16 35:12,16 36:7 39:5,11 39:15 40:3,6 42:2 44:21 47:4 49:24,25 55:19 56:12,22 57:2,4 62:8
**department's** 21:8 22:7 27:3
**departmental** 44:25 45:8,9
**depend** 21:25
**depending** 20:18

**depends** 21:9
**deposition** 4:6 4:13 7:8,22 9:4 29:23 40:24 41:11 51:9 53:3 58:9 65:11 66:7 67:4 68:2 73:4
**deputy** 12:21 12:23 13:9 14:23,24,25 15:22 16:2,6,8 20:20
**derek** 2:6 3:11 5:10 70:18 71:4 73:5,20
**description** 71:8
**designated** 58:8
**desk** 18:23
**detective** 13:11 13:16,24 14:5 14:17 50:13
**determination** 37:19 43:18 44:6,20 48:24 50:18
**determinations** 57:18
**determined** 55:15
**developing** 20:24 21:5

**different** 24:19 31:3 39:11 40:3 58:2 61:24
**direct** 24:7 28:5
**directly** 21:12 23:24 27:25 61:14
**disciplinary** 8:17 54:7,13
**discipline** 12:3 44:23
**disciplining** 17:3 18:2
**discovery** 12:5
**discussion** 41:4
**district** 1:2,3 1:14,15 23:21 23:23 24:6 54:21 55:7,14 55:23 56:9,21 60:22
**doctor** 53:19 68:5 69:4
**document** 41:6 41:15 43:9 44:24 45:6,7 51:10,23 54:5 66:3 69:11
**documented** 48:11,12 49:5
**documenting** 48:4

**documents** 7:22,24 57:17 66:18 67:5,10 69:21
**doing** 24:8 39:19 49:7 56:16
**double** 52:23 59:5
**duly** 5:3 72:8

**e**

**e** 5:2,2,2,10,10 5:11 42:25 56:5 71:2,7
**earle** 3:12
**east** 47:16
**eastern** 1:3,15
**easy** 30:21
**education** 9:14
**effect** 4:15
**effective** 59:15
**effort** 33:25
**either** 26:6 37:22 50:12
**electronic** 44:20
**eligible** 27:15 27:19
**em** 30:20
**employed** 9:23
**employees** 17:24

**employment** 8:9 10:6,9 29:11 43:22

**enforcement** 10:11 27:8

**enrolled** 10:18

**entitled** 2:8

**errata** 73:2

**esq** 3:6,14,20

**et** 73:3,4

**evaluation** 52:17

**event** 53:7

**eventually** 27:12 55:14

**everybody** 30:21 41:2

**ex** 31:20

**exactly** 13:14

**examination** 2:6 5:18 71:3

**examined** 5:4

**example** 38:12

**except** 4:9

**exclusively** 28:20

**excuse** 41:3

**exhibit** 29:23 40:19 41:7 51:9 53:2,17 54:4,10,16,23 56:11 58:9 65:10 71:9,9 71:11,12,14,15

**exhibits** 66:6 66:15

**experience** 10:11 21:19,20 24:8 35:23 39:19

**expires** 73:25

**explain** 18:3

**explained** 31:21 32:2

**f**

**face** 43:20

**faces** 44:22

**fact** 68:15

**factors** 55:5

**facts** 18:9 50:3 52:19 62:16

**familiar** 24:13 24:16 26:11 45:14 46:16 50:7 55:4 61:13 63:19 64:25

**fast** 6:10

**feel** 21:12

**female** 46:8

**fernandez** 3:6 5:19,22 30:7 30:12,15 32:3 40:12,15,18,22 45:18 51:11,14 58:10,17,20 59:8 66:11,16

69:13 71:4

**fifteen** 14:12

**figured** 53:6

**file** 8:3,5,16,20 8:24 18:22,25 19:10 24:11 25:2 29:14,18 29:19 35:7,8 37:7 39:2,6,16 41:18,23 44:7 44:13,17,18 45:4,12 46:6 46:11 47:10,14 48:8,9 51:4,23 52:3,13,16 54:6 55:21,22 57:6,16,20 62:20 68:13 69:7,20

**filed** 47:11 64:2 64:7 65:25

**filing** 4:5

**fill** 18:24 29:7,8

**find** 37:7 48:20 51:5

**fine** 37:23 40:21

**firing** 16:22

**firm** 5:23

**first** 5:3 6:18 6:21 23:24 45:20 51:12 62:23

**firsthand** 42:5 62:12

**fisher's** 65:4

**five** 27:16

**foia** 12:5

**followed** 19:11

**follows** 5:5

**force** 4:15

**form** 4:9 18:24 29:8,19 30:2 30:22 31:7,15 31:25 33:21,22 34:8,16,23 35:19 36:10,13 46:2 47:24 48:6,16 49:18 49:20 53:8 56:7 60:6

**forms** 18:23

**forth** 62:17 72:8

**found** 48:25

**founded** 37:25 43:19 44:23

**four** 9:21 47:7

**full** 5:8

**further** 4:8,12 38:15 72:12

**g**

**garden** 2:2,2 3:4,5

**garner** 5:14

**garry's** 23:12
**generate** 53:23
**generated** 29:5
  43:9,9
**getting** 15:13
  19:4 25:23
**gianelli** 3:16
**give** 27:2,15,17
**given** 38:19
  62:2 67:14
  68:8,22
**go** 17:17 20:11
  22:11 30:15
  48:7 56:17
  57:16 62:14
**going** 6:3,20
  25:8 26:8 28:2
  29:21,25 40:8
  40:9,15,25,25
  51:7 55:5
  58:10,17 63:7
  66:5,18 67:23
  67:24 69:9
**good** 5:20,21
**gotcha** 14:18
  15:15 16:12
  23:15
**graded** 27:9
**graduating**
  11:8
**guess** 66:23
**guesses** 6:8
  36:23

**guevrekian**
  1:11,21 3:18
  6:2 8:18 24:10
  24:14,17 31:8
  35:16 36:5,11
  38:20 46:14
  49:12 54:13
  57:25 59:13,22
  60:2 61:4,8
  63:15,24 64:8
  65:13 68:8,14
  68:25 69:16
**guevrekian's**
  8:2,5,24 24:23
  25:2 26:19
  29:17 33:10
  35:7 37:7
  38:25 41:18
  44:7,12,17
  45:12 46:5,10
  47:9,13 51:3
  51:22 54:6
  57:6,20 59:17
  60:19,25 62:20
  68:13 69:6,20
**guidance** 22:11
  22:21
**guys** 51:12
  66:11

**h**

**h** 71:7
**hand** 21:16

**handing** 29:25
  30:16 32:21
  33:8 34:11
  51:12,14,16,17
  52:25 58:11
  59:8,10 66:17
  68:2 70:2
**handle** 21:13
**handled** 18:15
  20:3 42:21
  43:5
**handwritten**
  29:8
**happened** 42:9
**happy** 6:14
**harris** 3:9
**hauppauge**
  3:19
**head** 21:23
  38:13
**held** 2:8 12:8
  41:4
**help** 59:12
**hempstead** 1:9
  1:9,10,10,11,19
  1:20,20,21,21
  3:10,10,10
  5:14,25 8:11
  9:24 10:3,6,10
  11:22 17:19,24
  18:4 20:21
  27:20 31:16
  32:13 35:18
  36:6 39:4,17

  44:21 47:4
  56:22,25 62:8
  65:23,24 73:4
**hempstead's**
  35:11 65:18
**hereto** 4:5
**highest** 9:13
**hire** 8:14 26:19
  27:15,19,25
  28:4 35:17,25
  37:4 38:25
  39:7
**hired** 36:5
  37:10
**hiring** 16:22
  26:11,22 27:3
  27:12 28:8,9
  38:2 40:2
**history** 8:9
**hmm** 13:8
  24:12
**hold** 12:20
  13:10,13,17,19
  14:2,6,9,20
  25:9 58:2
  59:18 68:17
**holding** 14:19
**holland** 16:4,13
  16:17 55:3
**horn** 3:3
**hours** 7:5
**howe** 33:19
**hpd** 51:10 71:9
  71:9,11,12

**hpd000075**
71:10
**hundred** 25:21

**i**

**idea** 25:23
**identification**
41:8
**immediately**
49:24
**important**
34:13,20,24
35:3
**improper** 47:19
47:20
**impropriety**
49:13
**incident** 48:20
52:22
**indicated** 33:22
**indicates** 68:5
**indicating** 32:4
54:6 66:13
**indication**
36:10 37:8
**individual**
39:10
**individually**
1:11,22
**individuals**
65:2
**information**
20:8 22:21
25:8 31:4

50:12 62:2,12
**informed** 49:25
**initial** 22:9
48:5
**initially** 43:6
**initiate** 20:17
50:2
**initiated** 55:8
**ins** 18:21
**inspector** 33:19
33:19
**inspectors**
33:17,18
**instances** 23:19
23:22
**institute** 69:23
**intends** 39:7
**interdepartm...**
43:2
**interested**
72:15
**internal** 20:22
20:25 21:8
22:7,16 23:8
36:11 37:9,14
37:20 39:24
**internally** 23:2
**interview** 27:22
27:24 29:2,3,5
29:19 32:9
33:10,13,16
36:13
**interviews**
27:23 68:24

69:3,15,22
**investigate**
48:19
**investigated**
50:17
**investigating**
20:14
**investigation**
15:24 27:11
28:24 35:9,15
36:12 37:3,9
37:14,21,25
39:25 42:2,15
43:10,15 44:11
44:12 48:8
49:2,4 50:2,20
55:8,10,24
56:9,14,16,21
56:23,25 57:5
57:19 59:23
60:3,14,21
61:17 62:3,9
63:3,7
**investigation's**
48:10
**investigations**
20:18 38:15
**involve** 18:17
18:18
**involved** 15:3
20:19 64:3
**issue** 24:3
**issues** 15:3

**it'll** 48:7

**j**

**jack** 1:10,21
3:18 6:2 8:2,5
8:18,23 24:9
24:14,17,23,25
25:11 26:18
29:17 31:7
33:2,10 35:7
35:16 36:5,10
37:6 38:19,25
41:17 44:6,12
44:16 45:11
46:5,10,13
47:9,13 49:12
51:3,22 54:5
54:12 57:6,19
57:25 58:3
59:13,16,22
60:2,19,25
61:4,7 62:20
63:4,15,24
64:2,8 65:12
68:7,12,14,25
69:6,16,19
**james** 5:14
**january** 59:15
**jayne** 65:4
**jennilee** 64:20
**jmw** 1:4,15
**job** 48:4
**john** 1:11,22

**johnson** 1:10 1:20 3:11 58:25 59:2 65:24

**johnson's** 67:13

**k**

**k** 5:2,10
**keep** 51:21
**kept** 48:7
**know** 5:16 6:5 6:7,11,16 13:12,14,21 18:14,15,17 20:20 21:3,10 21:14 23:4,11 23:12,22,25,25 25:8,9,21 26:18,21 29:16 30:5,5 31:21 32:6,15 33:9 33:20 34:2,4 35:3,8 36:7,8 36:18,19,20,21 38:9,24 39:4 39:23 40:6 41:15,25 42:21 43:3,4,23 44:4 47:6 48:15,22 48:25 50:4 51:19 52:12,15 52:18,18 53:21 54:12,19 55:9

55:18 58:12 59:21,22,24,25 61:20,22,25 62:7,15,17 63:5,5,6,7 64:3 64:4 66:20 67:12,18,19,20 69:5
**knowledge** 19:13,14 38:21 42:5 50:8
**kristin** 64:17

**l**

**la** 3:16
**labor** 22:19 23:5
**lapinta** 3:20 30:11,13,18 32:4 35:20 45:17 49:19 51:15 57:9,12 58:15,19 59:9 60:6 66:13 68:17 69:8 70:7,8,13
**law** 10:11 27:7
**lawsuit** 5:24 9:10 26:2
**lawsuits** 23:12 38:14
**lecours** 3:14 30:9,19 34:14 34:16,23 35:19

35:22 40:10,13 40:17,21 46:2 47:24 48:16 49:18,21 51:13 60:7,11 66:14 70:9
**legal** 18:11,18 22:10,13,15,16 22:18,25 42:11 62:16 73:2
**letter** 51:25 53:9,12 56:7 68:4,4,10,23 69:14
**level** 9:14
**lieutenant** 13:11,17,18,20 13:23 47:3
**lieutenants** 17:8
**line** 15:14 73:6
**list** 27:15,17 28:8
**listed** 35:4
**litigation** 6:4 7:14
**little** 12:24
**llp** 3:3
**long** 10:24 11:13 12:7 13:13,19,25 14:9
**look** 48:23 50:13,14 51:18

62:15
**looking** 25:14 63:9
**looks** 31:2,12 53:4
**loss** 43:21,22
**lot** 33:25

**m**

**m** 45:19
**made** 15:20 19:25 46:13 54:20 61:3,7 61:11 63:16,23 68:14 69:15
**mail** 42:25 56:5
**maintained** 44:15
**make** 20:10 30:21 33:25 39:5 41:2 50:16,17 58:15 58:18
**makes** 49:10
**manpower** 15:2
**march** 2:3 73:4
**mark** 40:9,23
**marked** 29:22 41:6,10 51:8 67:25 71:10,12 71:13,15,16
**marriage** 72:14

| | | | |
|---|---|---|---|
| **material** 48:21 | 50:11 55:7 | 54:20 56:8,20 | **o** |
| **matter** 7:11 | **minor** 24:2 | 60:22 | **o'brian** 32:12 |
| 18:18 42:15 | 38:5 | **nature** 15:5 | 32:16 |
| 50:14,15 62:15 | **mm** 13:8 24:12 | 21:25 22:3 | **object** 69:9 |
| 72:16 | **moment** 40:25 | 48:3 63:16 | **objection** 34:14 |
| **matters** 12:4,4 | **montera** 46:21 | **need** 6:15 21:12 | 34:16,23 35:19 |
| **mayor's** 19:6 | 47:11,15 49:14 | **new** 1:3,15 2:2 | 35:20 46:2 |
| **mazza** 45:15,18 | 49:22 | 2:11 3:5,13,19 | 47:24 48:16 |
| 45:24 46:7,13 | **montera's** | 5:15 19:2 | 49:18,19 57:9 |
| 49:9,10 | 49:16 | 25:10,18 28:4 | 57:12 60:6,7 |
| **mcguire** 1:6 | **montero** 46:17 | 35:15 72:6 | 68:18 |
| 5:23 9:10 61:3 | 46:19 47:2 | **night** 25:15 | **objections** 4:9 |
| 61:7,12 62:10 | **months** 10:25 | 41:21 52:4,7 | **obligation** |
| 63:17 66:9 | 13:21 | 55:4 | 47:22 48:15,18 |
| 71:15 73:3 | **morning** 5:20 | **non** 2:7 3:11 | 49:17 |
| **mcguire's** | 5:21 6:3 | **nonresponsive** | **occasion** 24:19 |
| 62:24 64:12 | **motor** 3:18 | 69:10 | **occasions** 24:4 |
| 65:19 | **move** 6:8,18,22 | **notary** 2:10 | **occurred** 21:21 |
| **mean** 8:6 17:19 | **mumble** 6:10 | 4:14 5:4 70:23 | **october** 10:7,16 |
| 25:19 34:12 | **murtha** 3:9 | 72:5 73:24 | 53:5 |
| 38:4,11,14 | **n** | **note** 35:20 | **office** 19:6 |
| **meaning** 22:2 | | **noted** 37:2 | 23:12,21 24:6 |
| **medications** | **n** 5:2,11 71:2 | 70:14 | 50:15 54:21 |
| 6:24 | **name** 5:8,22 | **notes** 72:11 | 55:24 56:9,21 |
| **melissa** 2:9 | 7:16 31:4 32:7 | **notice** 2:11 | 58:23 59:18 |
| 72:4,22 | 32:12 45:6,20 | 34:5 | 60:22 |
| **member** 10:14 | 63:20 73:3,5 | **notified** 27:13 | **officer** 1:10,11 |
| **member's** 48:9 | **names** 27:16,17 | 42:10 55:23 | 1:21,22 3:18 |
| **memo** 43:2 | 63:6 | **notifying** 19:7 | 6:2 14:21 18:8 |
| 54:5 56:5 | **nassau** 10:22 | **numbering** | 20:2,4,4 24:20 |
| **memos** 57:18 | 11:2 20:25 | 40:11,14 | 24:21 27:4 |
| **mentioned** 16:8 | 21:7 22:6 27:5 | **nypd** 32:25 | 29:10 32:14 |
| 17:2 24:10 | 27:6,10,18 | 35:9 37:10 | 33:3,6,6 35:25 |
| 28:15 39:23 | 28:9,12 39:12 | 38:20 39:2 | |

39:6 42:13
43:20 45:3,15
45:24 46:7,13
47:18,21 49:9
49:9,10
**officer's** 29:13
29:14
**officers** 17:6
18:2 27:24
28:4
**official** 1:12,22
**oh** 16:7 32:24
57:11 58:14,15
**okay** 6:13 7:10
7:13,16,21 8:4
8:12,16,20,23
9:3,8,13,16,19
9:22,22 10:2,8
10:13,16,20,23
11:2,7,13,16,19
11:24 12:7,11
12:18,22,25
13:9,16,22
14:8,12,22
15:8,22 16:2
16:14,14,18,24
17:2,12,18,25
18:5,19 19:9
19:14,24 20:12
21:24 22:13,22
23:6,15,17
24:9,16,22,25
25:12,16 26:9
26:14,17,21,25

28:7,11,15,23
29:4 30:3,6
31:14 32:5,11
32:11,15 33:4
33:9,14,20
34:3,10 35:6
36:2,4,9,24,25
37:6,12,17,24
38:8,17,19,24
39:21,23 40:8
41:12,16,17,22
42:7,17,23
43:8,12 44:2,9
44:19 45:5,14
45:23 46:5,19
47:5,9 48:2,13
49:8,15,22
50:19 51:3,7
51:15,20,25
52:9 54:3,25
55:9,16 56:2,8
56:19 57:3,14
57:22 58:7,19
59:7,11,16,21
59:25 60:9,10
60:16 61:6,10
62:5,18,22
63:11,22 64:5
64:17,25 65:4
65:7,15,21
66:16,21,21
67:2,7,12,21
68:12,20 69:19
69:25 70:3

**once** 43:23
**ongoing** 56:10
**online** 18:25
19:2,11
**ordering** 70:12
**outcome** 55:10
72:15
**outside** 17:21
**overall** 63:3
**overview** 27:2
**ovington** 3:12
**own** 22:16
28:18 56:13,16
56:23 57:4

**p**

**p.c.** 3:17
**pablo** 3:6 5:22
71:4
**package** 8:8
**page** 31:25
34:5,7,9 71:3,8
73:6
**pages** 25:22
**paragraph**
31:24
**parking** 15:12
18:14
**parkway** 3:18
**part** 60:10
**particular**
43:16
**parties** 4:5
72:13

**partner** 24:22
**party** 2:7 3:11
7:13
**pass** 27:13
**passed** 27:18
**passes** 49:12
**past** 7:5 39:21
**patrick** 45:21
**patrol** 17:6,7
18:2 29:13
47:18
**paul** 1:10,20
3:11 65:24
67:13
**pba** 45:3
**pending** 6:17
35:24 60:14
**people** 17:15,19
23:23 27:17,22
**performance**
8:21
**period** 11:9,14
11:17 12:22
**person** 29:3
61:13
**personal** 7:10
**personnel** 8:2,5
8:24 15:18
16:22 17:3,5
17:14,20 24:11
25:2 29:18
35:7,8 37:7
39:2,6,6,16
41:18 44:7,13

44:17 45:12 46:6,11 47:10 47:14 51:4,22 52:3 54:6 57:6 57:8,20 62:20 68:13 69:7,20

**pertains** 31:7

**perusing** 30:6 30:18 41:16 51:15,20 58:14 59:9 66:21 67:2

**petri** 33:19

**phone** 19:3

**phonetic** 46:17

**pinta** 3:17

**place** 2:9 50:5

**plaintiff** 1:7,17 61:14

**plaintiff's** 29:22 40:23 41:7,10 51:8 53:17 54:4,9 54:15,22 56:11 58:8 65:10 66:6 67:25 71:8

**plaintiffs** 3:4 5:23 63:5

**plaza** 2:2 3:4

**please** 5:8,12 66:25

**pllc** 3:9

**pm** 71:9,11,12 71:14,15

**point** 6:5,9 18:9 42:12 61:23

**pointing** 31:23 53:7

**police** 1:9,10,10 1:11,20,20,21 1:21 3:10,11 3:17 6:2 8:11 10:3,10,18,22 11:3,8,22 14:21 17:20 18:4 19:21 20:21,25 21:7 22:6,25 23:9 24:20,21 26:12 27:4,6,20 28:4 29:9 31:17 32:13 33:3 35:11,15 36:7 39:5,15,17 44:21 47:4 56:22,25 62:8 65:24

**polytechnic** 9:18

**position** 12:8

**potentially** 38:3

**practice** 36:6 40:5

**preliminary** 6:21

**preparing** 67:9

**prescribed** 6:24,24

**present** 5:24 16:15

**presently** 6:23 9:23 10:14 11:21 16:24 36:2 37:13 38:17 39:21,24

**pretty** 20:6 67:23

**previously** 7:7 29:22 51:8 58:8 67:25 71:10,11,13,14 71:16

**primarily** 17:23

**prior** 7:21 9:3 10:8 12:18 13:9,16,22 14:5,18 29:10 39:25 60:19,25 67:4,7

**probably** 7:9 12:16 18:15 27:16 42:12

**probationary** 11:9,14,17

**procedurally** 42:4,8

**procedure** 50:25

**proceed** 22:12

**process** 18:3 19:12,15 20:7 26:12,14,22 27:3 43:6 50:5 62:15

**promoted** 12:15

**properly** 34:2

**provided** 53:11

**pruitte** 1:16 5:24 9:11 63:20,23 65:25 66:10 71:16

**pruitte's** 64:15

**psa** 32:25

**psych** 53:11

**psychiatrist** 53:8

**public** 2:10 4:14 5:4 70:23 72:5 73:24

**pull** 30:20

**punishment** 43:21

**pursuant** 2:11

**put** 33:25

**q**

**question** 4:10 6:6,9,11,17,18 34:18 35:21 50:4 57:13 65:21 68:18

69:12
**questions** 6:4
6:21,23 29:9
34:21 35:4
70:5,9
**quicker** 28:6
**quickly** 25:14

**r**

**r** 5:2,2,2,10,11
5:11
**rank** 11:21
12:19,19 13:10
13:13,17,20,23
14:2,6,9,13,19
14:19,23 17:9
17:10 58:2
**reach** 21:13
**read** 25:9 52:4
52:7 53:6
**reading** 31:24
53:24 69:11
**ready** 51:19
66:19
**reason** 33:21
73:6
**recall** 7:16
10:23 12:14
16:3 21:22
29:20 30:25
44:14 45:10,13
52:5,8 55:22
**receive** 18:7

**received** 18:20
54:13 62:14
**receiving** 49:11
**recently** 18:25
**recognize**
32:11
**recollection**
59:12
**recommend**
68:6
**recommendat...**
68:7,16
**record** 5:9,13
29:4 41:5
42:18 43:8
44:5,20 45:11
50:20 69:9
**records** 51:5
**refer** 35:2
**reference** 54:21
68:14 69:15
**referenced** 54:9
54:15,22 56:11
65:10
**references**
46:11 53:9
68:23
**referencing**
47:15 52:3
**referral** 42:24
52:3,20 53:11
54:20
**referrals** 46:7

**referred** 21:2,7
22:6 23:20
49:2
**referring** 15:11
17:6 22:14
25:25 26:4
30:23 34:7
39:9 54:3
**refers** 24:5
**refresh** 59:12
**regard** 16:21
**regarding** 6:4
9:5,9 15:24
20:9 24:9 46:7
46:13 49:12
52:5 54:14
56:7 57:18
61:8 62:3,13
63:4,15 66:23
69:21
**regardless** 27:7
**regards** 14:22
17:25 37:20
42:3,18 43:16
44:10 49:17
56:10 57:22
61:17 65:22
**regina** 1:16
5:24 9:10
63:19,20,22
64:14 65:25
66:9 71:16
**related** 7:11,12
8:10 15:17

53:25 54:8,8
54:17 72:13
**relation** 53:6
53:16
**relies** 28:20
**remember** 25:6
58:24
**rep** 42:14
**repeat** 34:18
**rephrase** 6:14
**report** 35:5
**reporter** 5:7
70:6,11 72:5
**reports** 69:21
**representative**
45:3
**represents** 5:23
**request** 12:5
22:21 39:5,13
60:20 61:2
**requested** 39:2
**reserved** 4:10
**respect** 47:22
**respective** 4:4
**response** 66:22
**responses**
33:22 34:21
**responsibilities**
12:2 14:24
16:21 17:13
**responsibility**
15:23
**retire** 47:5

**retired** 6:2 46:20 47:3 58:2,3 59:13 59:23 60:24 61:19

**retirement** 8:14 59:17 60:3,15 60:20 61:2

**review** 7:22,25 8:21,25 29:17 30:2 35:6 39:16 41:14,17 50:3 65:5,17 66:18,24

**reviewed** 24:11 51:4 64:6,11 64:14,23 66:2 68:12

**reviewing** 24:25 37:6 41:14 51:21,22 69:6,19

**revised** 31:6

**reynolds** 3:16

**richard** 16:17

**right** 31:23 32:3,23,24 50:9 67:2,3,21

**road** 38:14

**role** 17:3 67:8

**room** 32:9

**russo** 31:19,22 32:2,6 33:10

**s**

**s** 71:7 73:6

**sat** 7:7

**saying** 21:15 31:11

**says** 31:20,21 32:2 44:25

**schedule** 17:17 27:22

**scheduling** 15:2

**screw** 40:22

**sealing** 4:5

**second** 55:12 57:10

**see** 20:8 26:7 30:11 32:18,22 36:14 38:3 41:21 44:9 46:6,11 47:10 47:14 52:6,10 53:8,12 54:11 54:17 55:20 58:12,25 66:21 67:13 68:9,25 69:16,20

**seeing** 29:20 44:14 45:13 55:22

**seen** 30:9 64:6 64:10 67:5

**send** 56:6

**sent** 53:7,19

**separate** 23:10

**september** 12:16 13:6

**sergeant** 13:24 14:6,7,14,16,17 14:19 46:16,19 46:21 47:11,15 49:14,16,22

**sergeants** 17:7

**serious** 38:6,11

**service** 17:14 17:16 27:9,10 27:14,19 28:16 39:12 46:20

**services** 10:14 28:21

**set** 17:16 72:8

**seven** 10:25

**several** 64:3

**sexual** 61:8

**shared** 15:6

**sheet** 73:2

**shorthand** 72:4

**show** 29:21 51:7,11 58:7 58:11 66:5 67:24

**showing** 41:9 53:2

**signature** 72:21

**signed** 4:13,15 31:19 45:2

**similar** 30:24 45:25 63:16,23 66:23

**simple** 18:13 19:3 48:12

**sir** 9:13 57:11

**sitting** 33:15

**situation** 21:22

**sixty** 9:21

**skim** 25:4

**skimmed** 25:4 41:23

**skimming** 25:22

**solutions** 73:2

**somebody** 49:3

**someone's** 18:13

**sorry** 16:7 22:23 36:22 46:23 52:14 57:11 62:22,25

**sort** 28:24

**sorts** 63:23

**speak** 6:9 9:4,9 23:14

**specifically** 8:6

**spoke** 55:3

**squad** 24:19

**stamped** 51:10

**start** 6:20 40:16 43:7 53:23

| | | | |
|---|---|---|---|
| **starting** 40:14 | **supervisor** 19:8 | **testimony** 9:5 | 63:4 70:4,14 |
| **state** 2:10 5:8 | 20:2 45:25 | 72:7 | **today** 7:2 9:5 |
| 5:12 28:3 69:8 | 47:19,21 48:15 | **thank** 30:13,13 | 53:18 54:10,16 |
| 72:6 | 48:19 50:14 | 46:25 51:16 | 54:23 56:12 |
| **stated** 37:12 | **supervisor's** | 67:21 69:25 | **today's** 7:21 |
| **statement** 48:6 | 47:22 | 70:4 | 9:3 40:24 |
| **states** 1:2,14 | **sure** 23:3 31:22 | **thanks** 30:10 | 41:10 53:2 |
| **station** 18:22 | 33:25 34:19 | **things** 12:5 | 65:11 67:4 |
| 19:4 | 42:20 50:16,25 | 21:2 29:10 | **together** 24:18 |
| **stay** 44:18 | 52:25 69:13 | 67:22 | **tooher's** 64:20 |
| **stenographic** | **surprised** 52:6 | **think** 23:16 | **top** 21:23 32:23 |
| 72:11 | 52:10,11 | 25:13 31:20,20 | 32:24 38:13 |
| **step** 42:18 | **surrounding** | 38:12 40:18,19 | 44:25 |
| **steven** 32:12,16 | 52:19 | 48:18,23 55:11 | **tours** 15:2 |
| **stipulated** 4:3,8 | **sworn** 4:15 5:3 | 58:6,22 67:22 | **training** 17:14 |
| 4:12 | 70:20 72:8 | **thinking** 55:13 | 17:16,17 68:21 |
| **stipulations** | 73:21 | **thoroughly** | **transcript** |
| 2:12 4:2 | | 50:16 | 70:12 72:9 |
| **street** 47:16 | **t** | **thought** 16:7 | **transcription** |
| **structure** 31:2 | | 53:22 | 72:10 |
| **submitted** 8:13 | **t** 71:7 | **thousand** 14:12 | **transferred** |
| **subscribed** | **take** 6:7,15 | **three** 13:15 | 59:6 |
| 70:20 73:21 | 27:5,8 36:21 | 14:10 31:25 | **trial** 2:6 4:11 |
| **substance** | 40:25 48:5 | **throw** 67:17 | **trials** 38:15 |
| 48:22 | 50:11 51:18 | **ticket** 15:13 | **true** 72:9 |
| **substantial** | 67:16 | 18:14 | **truthfully** 7:2 |
| 18:16 44:3 | **taken** 2:9 42:18 | **time** 2:9 4:11 | **try** 18:8 23:4 |
| **substantive** | 66:7 | 12:22 15:5 | **trying** 25:6 |
| 6:22 | **tell** 63:25 67:18 | 16:3,5 32:19 | 58:6 |
| **successfully** | **ten** 27:16 | 33:17 36:4 | **two** 12:10 |
| 11:4,16 | **test** 27:6,9 | 37:4 38:24 | 13:15,15 14:12 |
| **suite** 3:5,12,19 | 52:16 | 42:21 43:22 | 14:15 15:6 |
| **supervision** | **testified** 5:5 | 58:23 59:16,19 | 16:8,10 28:13 |
| 68:9,15,21 | **testify** 6:25 | 61:22 62:3,23 | 34:7,9 65:2 |

| | | | |
|---|---|---|---|
| 67:5,10 68:24 68:24 69:3,15 69:22 **type** 31:3 **typically** 20:16 33:12 43:5 | **v** **valid** 43:24 48:21 **vanderbilt** 3:18 **varied** 15:14 **various** 29:8 **verbally** 43:5 **veritext** 73:2 **verse** 20:4 **victoria** 46:8 47:16 **view** 36:25 **village** 1:9,9,9 1:10,11,19,19 1:20,21,21 3:9 3:10,10 5:25 9:23 10:3,6,9 12:5 17:19,23 22:18,20,25 31:16 35:11,17 36:6 65:18,22 65:23 73:4 **village's** 22:15 **villages** 28:13 **vs** 73:3 | 37:13,18 39:24 40:20 41:20 58:12 66:11,24 **wanted** 22:23 **warner** 2:7 3:11 5:10,11 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 66:1 67:1 68:1 69:1 70:1,18 71:5 73:5,20 **way** 5:14 19:16 21:15 22:11 26:15 72:15 **we've** 23:25 24:18 29:22 | 41:9 58:7 **welcome** 70:2 **went** 59:4 **where'd** 32:22 **wilke's** 64:18 **wise** 42:4 **withdraw** 26:10 **withdrawn** 11:3,20 16:19 21:19 26:17 43:13 57:23 60:18 63:12 64:10 65:8 67:7 69:5 **witness** 2:7 3:11 5:2 7:14 7:15 45:2 53:2 57:11,14 58:11 60:9 71:3 72:7 73:5 **women** 64:3 **word** 31:22 **work** 7:11,12 12:3 23:9 27:7 **worked** 24:18 33:2 **working** 28:6 **workload** 15:7 **works** 27:5 **wrap** 67:23 **wright** 3:3 **write** 34:20 |
| **u** **unable** 33:11 **under** 10:25 12:10 22:11 35:9,14 36:11 37:3,9 59:23 60:2,21 **understand** 6:10 18:12 31:13 **understood** 16:14 33:7 61:15 **unfounded** 37:19,22 55:15 **union** 42:14 **uniondale** 3:13 **united** 1:2,14 **university** 9:18 **unknown** 43:11 **upset** 18:13 **uses** 26:12 **usually** 18:9 48:6 | **w** **w** 5:2,11 **wait** 30:16 **waiting** 60:10 **waived** 4:7 **walk** 18:21 **want** 6:7 30:7 36:14,17,21 | | |

| x | zip 5:16 |
|---|---|
| **x** 1:5,14,16,24 71:2,7 | |
| **y** | |
| **yeah** 12:13 13:3,5 16:13 16:25 17:7 19:20,22 21:4 28:10 30:12 31:5,19,25 32:20,20 33:8 33:23 38:3 40:17,21 41:20 45:22 46:24 51:13 53:4 55:17 58:18,20 58:22 59:3,6 60:11,13 62:6 62:21 65:16 66:25 69:2,3 **year** 11:15 12:24 14:4 **years** 7:9 12:10 13:15 14:10 47:8 **york** 1:3,15 2:2 2:11 3:5,13,19 5:15 28:4 35:15 72:6 | |
| **z** | |
| **z** 45:19,19 | |

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.